UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

LEGION INSURANCE COMPANY,
Plaintiff,

v. C.A. No. 02-045T

FAMILY SERVICE, INC. and
BROOKE BOURASSA,
Defendants
and
Third Party Plaintiffs,

v.

RHODE ISLAND INSURERS'
INSOLVENCY FUND,
Third Party Defendant.

**MEMORANDUM AND ORDER**

Legion Insurance Company ("Legion") brought this declaratory action against its insured, Family Service, Inc. ("Family Service") pursuant to 28 U.S.C. §§ 1332(a), 2201 and 2202, seeking a declaration that a Non-Profit Organization Liability Insurance Policy (the "Policy") issued to Family Service afforded no coverage for an employment discrimination claim made against Family Service by Heather Harmon ("Harmon"). Family Service, later, filed a counterclaim against Legion for Legion's alleged breach of the Policy and a Global Settlement Agreement under which Legion was to

contribute toward the settlement of Harmon's claim and pay attorneys' fees incurred by Family Service.

When Legion became insolvent and was forced into rehabilitation and, then, liquidation proceedings in Pennsylvania, Family Service filed what it styled as a third party complaint against the Rhode Island Insurers' Insolvency Fund (the "Fund"), seeking to recover the amounts owed by Legion.

The case, now, is before the Court for consideration of: (1) Family Service's motion for summary judgment on its counterclaim against Legion; and (2) the Fund's motion to dismiss Family Service's third party complaint. For the reasons hereinafter stated, Family Service's motion for summary judgment is granted and the Fund's motion to dismiss is denied.

## Background

On July 1, 1998, Legion issued its Policy to Family Service. On September 2, 1998, while the Policy was in force, Harmon brought suit against Family Service in state court alleging employment discrimination (the "underlying action"). Legion reserved its right to disclaim coverage, apparently claiming that Family Service knew of Harmon's claim when the Policy was issued but failed to disclose it, but Legion began paying the counsel fees incurred by Family Service in defending against Harmon's suit. In November 2001, Legion ceased paying Family Service's counsel fees and, on January 18, 2002, it brought this declaratory action.

On March 22, 2002, Family Service, Legion, and Harmon entered into the Global Settlement Agreement under which Harmon agreed to dismiss the underlying action in exchange for a payment of $27,500. Family Service agreed to contribute $20,000 toward the settlement and Legion agreed to contribute the remaining $7,500. Legion also agreed to pay all legal fees incurred by Family Service in the underlying action, and to dismiss its declaratory judgment action.

When Legion failed to make those payments, Family Service asserted counterclaims against Legion for breach of the Policy and the Global Settlement Agreement as well as for bad faith. After Legion was ordered into liquidation, Family Service filed its third party complaint against the Fund seeking "all sums that may be adjudged against Legion in Family Service's counterclaim."[1] Third Party Complaint at 4. In the meantime, this Court dismissed Legion's declaratory action on the ground that the Global Settlement agreement rendered Legion's declaratory judgment claim moot.

It appears that the Fund has paid Legion's $7,500 share of the Harmon settlement to Family Service, but the Fund refuses to pay Family Service's counsel fees, claiming that they are not covered

[1] On December 12, 2002, during a hearing on whether, in light of the Global Settlement Agreement, Legion's declaratory judgment claim should be dismissed as moot, Family Service's counsel stated that Family Service would dismiss all of its counterclaims if Legion's declaratory action were dismissed and Family Service's motion to enforce the settlement agreement were granted. 12/12/02 Tr. at 17.

under the Rhode Island Insurers' Insolvency Act, R. I. Gen. Laws §27-34-8, because they do not "[arise] out of and [are not] within the coverage and subject to the applicable limits" of the Policy. Transcript of 08/07/07 hearing at 18-20.

## Analysis

### I. Family Service's Motion for Summary Judgment

#### A. The Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e). The burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 265 (1986). Once the moving party has met its burden, it is the nonmoving party's responsibility to set forth specific facts demonstrating that there is at least one genuine and material issue requiring a trial. Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991).

#### B. The Summary Judgment Motion

The parties agree that the dispositive issue with respect to Family Service's claim against Legion is whether Legion breached the Global Settlement Agreement. Legion does not dispute that it has failed to make the payments called for by that agreement.

However, Legion argues that the agreement is not binding because it was not reduced to writing and because Family Service failed to provide a release contemplated by the agreement. Legion's Statement of Disputed and Undisputed Facts ¶ 2.

Under Rhode Island law, "settlement agreements must be in writing and must be agreed upon by the parties to be binding." Deleo v. Gen. Accident Ins. Co., 693 A.2d 1029 (R.I. 1997). The writing need not be signed and it may consist of several documents, provided that they amount to "an integration of the actual settlement" and they show that the settlement has been "agreed to by all parties involved." E.W.H. & Assoc. v. Swift, 618 A.2d 1287, 1289 (R.I. 1993).

Here, Family Service has provided three documents that sufficiently set forth the terms of the Global Settlement Agreement. The first document is a letter dated March 22, 2002 from Family Service's counsel to Legion's counsel seeking confirmation of the settlement terms which the letter described as: (1) Legion's payment of $7,500 as its share of the Harmon settlement; (2) Legion's payment of all legal fees incurred by Family Service in the Harmon action; and (3) Legion's dismissal of the declaratory action. The letter closed with a request to "call [Family Service's counsel] immediately if this is not [Legion's counsel's] understanding of the settlement." Family Service's Ex. A.

The second document is a March 25, 2002 response letter in which Legion's counsel explicitly "agree[d] with the terms of the settlement" set forth in the March 22, 2002 letter. The letter went on to state that counsel had discussed "the additional term that the settlement be finalized along with a full Claim Release between Legion Insurance Company and the insureds. This goes hand in hand with the dismissal of Legions's DJ action." Family Service's Ex. C.

The third document is a July 23, 2002 status report sent by Legion's claims counsel to Legion's Senior Claims Supervisor which, again, confirmed that a settlement had been reached between the parties, and that the terms included "the dismissal of the DJ action with prejudice upon receipt of an executed Claim Release and Legion's satisfaction of defense costs through consummation of the settlement." Family Service's Ex. B.

Legion does not dispute that these letters accurately set forth the terms of the Global Settlement Agreement but it argues that, because Family Service failed to provide a release, the agreement is not binding. That argument is not persuasive because three days after its counsel confirmed the terms of the Global Settlement Agreement, Legion was placed into rehabilitation and it became clear that Legion would not fulfill its obligations under the agreement. Therefore, Family Service's obligation to provide a release never was triggered.

Since the terms of the Global Settlement Agreement are established and since it is clear that Legion has breached that Agreement, Family Service is entitled to summary judgment on its counterclaim against Legion.

**II. The Fund's Motion to Dismiss**

As the Fund points out, Family Service has incorrectly characterized its claim against the Fund as a third party claim. Rule 14 allows a defending party to assert a third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1)(emphasis added). Accordingly, a third party complaint "must set forth a claim of secondary liability such that, if the third party plaintiff is found liable, the third party defendant will be liable to him/her under a theory of indemnification, contribution, or some other theory of derivative liability recognized by the relevant substantive law." Toberman v. Copas, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992)(Emphasis in original). Here, Family Service is not seeking indemnity or contribution from the Fund for any claims asserted against Family Service. Rather, Family Service is seeking to join the Fund as an additional party against which it is asserting its counterclaims.

However, Family Service's mislabeling of its claim against the Fund is not, by itself, a basis for dismissal. If a pleading states a claim upon which relief may be granted and puts the party

against which it is asserted on notice of the claim, the fact that the pleading may be incorrectly labeled is not fatal to the claim. See e.g. Voytko v. Ramada Inn of Atlantic City, 445 F. Supp. 315, 325 (D.C.N.J. 1978)(Courts generally recognize that it is "improper to dismiss a claim which raises a cognizable cause of action where that claim is merely mislabeled"). See also In re Blewett, 14 B.R. 840, 842 (9th Cir. BAP 1981)(Pleading is to be "judged by its substance rather than by its form or label"); In re Jasperson, 116 B.R. 740, 744 (Bkrtcy. S. D. Cal. 1990)("It is only necessary that the substance of the initial pleading, and not the form or label, provide notice to the adversary of the nature of the claim").

Nevertheless, the correct characterization of Family Service's claim against the Fund is important for both procedural and jurisdictional reasons. In effect, Family Service seeks to join the Fund as a party against which its counterclaim is asserted. Fed. R. Civ. P. 13, which deals with counterclaims, provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h).

Rule 19 deals with mandatory joinder. It requires the joinder of what are commonly known as "necessary" and "indispensable" parties and, if joinder is not "feasible" or "would deprive the court of subject matter jurisdiction," Fed. R. Civ. P. 19(a), it provides for dismissal if the absent party is "indispensable" in the sense that the action ought not proceed in that party's

absence. Fed R. Civ. P. 19(b); see Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989)(court must "decide whether considerations of fairness and efficiency . . . require that a particular person be joined as a party" and, if the party cannot be joined, "whether it is so important, in terms of efficiency or fairness, to join this [party], that, in the [party's] absence, the suit should not go forward at all"); 4 Moore's Federal Practice §19.02[2][a].

Rule 20 deals with permissive joinder. It allows additional parties to join as plaintiffs or to be joined as defendants, if the rights that they assert or that are asserted against them "aris[e] out of the same transaction [or] occurrence;" and "any question of law or fact common to all plaintiffs [or defendants] will arise in the action." Fed. R. Civ. P. 20(a)(1) & (2).

Both Rules 19 and 20 are procedural rules. Neither confers jurisdiction where jurisdiction, otherwise, does not exist. Thus, a party may not be joined where joinder would destroy subject matter jurisdiction. See 4 Moore's Federal Practice § 19.04 [1]; §20.02 [1][e]. Accordingly, when jurisdiction is founded on diversity of citizenship, dismissal is required when a non-diverse party is joined unless the court has supplemental jurisdiction over the claims involving that party. See Moore's at §20.02[5][a]("If plaintiff joins parties in violation of diversity of citizenship precepts, the case (or at least parties who destroy diversity) will

be dismissed unless supplemental jurisdiction is available.")

Nor does the Declaratory Judgment Act, 22 U.S.C. § 2201 and § 2202, create an independent basis for subject matter jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S. Ct. 876, 879, 94 L.Ed. 1194 (1950).

A. Diversity Jurisdiction

In this case, the jurisdictional basis for Legion's declaratory judgment action against Family Service was diversity of citizenship inasmuch as Legion is a Pennsylvania corporation and Family Service is a Rhode Island corporation. Since the Fund is an unincorporated association which, for diversity purposes, is deemed a citizen of Rhode Island[2], joining the Fund as a defendant to Family Service's counterclaim would destroy diversity. The fact that the Fund "stands in the shoes of the insolvent insurer" and assumes all its rights, duties and obligations, Thomas v. Rhode Island Insolvency Fund, 814 A.2d 335, 339 (R.I. 2003)(Fund stands in shoes of insolvent insurer, thereby assuming the insurer's obligations); Callaghan v. Rhode Island Occupational Info. Coordination Comm./Indus. Educ. Council of Labor, 704 A.2d 740, 746

[2] For diversity purposes, the citizenship of an unincorporated association is based on the citizenship of its members and in order for complete diversity to exist, no member of the association can be a citizen of the same state as any adverse party. See Trombino v. Transit Cas. Co., 110 F.R.D. 139, 144 (D.R.I. 1986)(Citizenship of each of Fund's members "counts toward the determination of the existence of complete diversity"). Here, some of the Fund's members are citizens of Rhode Island.

(R.I. 1997)(Fund is obligated to the extent insolvent insurer would have been obligated) and that the Fund is "deemed the insurer to the extent of its obligation on the covered claims," R.I. Gen. Laws §27-34-8(a)(2), does not alter the Fund's citizenship for diversity purposes. Trombino v. Transit Casualty Co., 110 F.R.D. at 144.

B. Supplemental Jurisdiction

The absence of diversity between Family Service and the Fund does not require the dismissal of Family Service's claim against the Fund if this Court has supplemental jurisdiction under 28 U.S.C. § 1367. Subsection (a) of Section 1367 sets out the general rule that a district court having original jurisdiction over a civil action, also has

> "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. §1367(a)(Emphasis added).

Subsection (b) creates a limited exception for cases in which original jurisdiction is based solely on diversity. It provides that:

> "district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. §1367(b) (Emphasis added).

The plain language of Section 1367(b) provides that the

exception "applies only to plaintiffs' efforts to join nondiverse parties." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 492 (4th Cir. 1998) (Emphasis in original). Limiting the exception to claims asserted by plaintiffs was based on a desire "to prevent plaintiffs from using supplemental jurisdiction to circumvent the diversity requirement by amending to add a non-diverse party" and on the recognition that "'[b]ecause defendants are involuntarily brought into court, their joinders and impleaders were not deemed as suspect as those of the plaintiff, who is master of his complaint.'" State Nat'l Ins. Co., Inc. v. Yates, 391 F.3d 577, 581 (5th Cir. 2004)(quoting United Capitol v. Kapiloff, 155 F.3d at 493). Consequently, those circuits that have considered the question have held that the term "plaintiff," as used in Section 1367(b), "refers to the original plaintiff in the action" and "the fact that [a defendant] has asserted a counterclaim does not make him a 'plaintiff.'" State Nat'l Ins. Co., Inc. v. Yates, 391 F.3d at 580 (citing cases).

In this case, since Family Service is not a "plaintiff," Section 1367(b) is inapplicable and the only remaining question in determining whether this Court has supplemental jurisdiction under Section 1367(a) is whether Family Service's claim against the Fund is sufficiently related to Family Service's counterclaims against Legion that it constitutes "part of the same case or controversy." See Grimes v. Mazda North Am. Operations, 355 F.3d 566, 572-73 (6th

Cir. 2004)("[D]istrict court properly retained subject-matter jurisdiction" when addition of non-diverse third party defendant arose from "'same nucleus of operative fact.'")

The answer to that question clearly is, yes. Both claims are based on Legion's obligations under the Global Settlement Agreement and any liability that the Fund may have to Family Service arises solely from Legion's liability. In addition, since the Fund argues that Family Service's claim is not a "covered claim" within the meaning of R.I. Gen. Laws §27-34-5(8) because it does not "[arise] out of and . . . within the coverage" of the Policy, both claims also may hinge, in part, on whether Legion's policy required it to provide a defense against Harmon's claim. Thus it seems clear that Family Service's claims against both Legion and the Fund "form part of the same case or controversy," and that, under Section 1367(a), this Court has supplemental jurisdiction against the Fund.

The finding that this Court has supplemental jurisdiction does not end the inquiry because Section 1367(c) gives a district court discretion to decide whether it should exercise supplemental jurisdiction. Subsection (c) provides that

> "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c)."

District courts are afforded "broad discretion" when making decisions regarding supplemental jurisdiction. Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003). "In making these decisions, district courts must examine the totality of the circumstances," including considerations of "'comity, judicial economy, convenience, fairness and the like.'" Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)).

In this case, the issue raised by Family Service's claim against the Fund is whether the claim for attorneys' fees incurred by Family Service in defending the underlying action is a "covered claim" within the meaning of R.I. Gen. Laws §27-34-8(a). If so, the Fund would have a responsibility to pay it; and conversely, if not, the Fund would have no responsibility to pay it.

Although the determination as to what constitutes a "covered claim" is governed by state law, the issue does not appear to be "complex." Under Section 27-34-5(8), a claim is a "covered claim" if it "arises out of and is within the coverage . . . of an insurance policy . . . by an insurer if the insurer becomes an insolvent insurer." R.I. Gen. Laws §27-34-5(8). Accordingly, the only questions presented are whether Legion's policy required it to pay the attorneys' fees incurred by Family Service in connection with the Harmon case and whether, under the Global Settlement

Agreement, its agreement to pay those fees arose out of that coverage.

Nor can it be said that Family Service's claim against the Fund "substantially predominate[s]" over Family Service's claim against Legion. On the contrary, Family Service's claim against the Fund is based on its claim against Legion and the two claims are inextricably intertwined. In order to determine whether the Fund is liable to Family Service, one must first determine the nature and basis for any liability that Legion may have to Family Service.

Finally, neither of the two remaining grounds for declining to exercise supplemental jurisdiction enumerated by Section 1367(c) exists in this case. Family Service's counterclaim against Legion has not been dismissed and no other "compelling reasons" for declining jurisdiction have been identified.

## Conclusion

For all the foregoing reasons, Family Service's motion for summary judgment on its counterclaim against Legion for attorneys' fees based on Legion's breach of the Global Settlement Agreement is granted and the Fund's motion to dismiss Family Service's claim against the Fund is denied.

IT IS SO ORDERED.

Ernest C. Torres
Sr. United States District Judge

Date: June 12, 2008